FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 05, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

|  |  |
|---|---|
| LENORD D.,<br><br>                    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>                    Defendant. | NO:  2:23-CV-00176-LRS<br><br>ORDER AFFIRMING THE<br>COMMISSIONER'S DECISION |

BEFORE THE COURT are the parties' briefs.[2]  ECF Nos. 8, 12.  This matter was submitted for consideration without oral argument.  Plaintiff is represented by

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Rules of Civil Procedure, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this suit.

[2] Plaintiff's opening brief is labeled a Motion for Summary Judgment.  ECF No. 8. The supplemental rules for Social Security actions under 42 U.S.C. § 405(g) went

ORDER - 1

attorney Chad Hatfield.  Defendant is represented by Special Assistant United States Attorney Katherine B. Watson.  The Court, having reviewed the administrative record and the parties' briefing, is fully informed.  For the reasons discussed below, Plaintiff's brief, ECF No. 8, is denied and Defendant's brief, ECF No. 12, is granted.

## JURISDICTION

Lenord D. [3] (Plaintiff) filed for disability insurance benefits and for supplemental security income on April 2, 2018, alleging in both applications an onset date of February 23, 2018.  Tr. 174-91.   Benefits were denied initially, Tr. 115-18, and upon reconsideration, Tr. 121-26.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on December 8, 2020.  Tr. 35-61.  On January 15, 2021, the ALJ issued an unfavorable decision, Tr. 12-32, and on June 11, 2021, the Appeals Council denied review.  Tr. 1-6.  Plaintiff appealed to the United States District Court for the Eastern District of Washington, and on June 8, 2022, the undersigned remanded the matter for additional proceedings.

After a second hearing on March 23, 2023, Tr. 503-18, the ALJ issued a second unfavorable decision on April 14, 2023.  Tr. 473-96.  The matter is now before this Court pursuant to 42 U.S.C. § 405(g).

---

into effect on December 1, 2022; Rule 5 and Rule 6 state the actions are presented as briefs rather than motions.  Fed. R. Civ. P. Supp. Soc. Sec. R. 5, 6.

[3] The last initial of the claimant is used to protect privacy.

ORDER - 2

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are therefore only summarized here.

Plaintiff was 56 years old on the alleged onset date. Tr. 489. He graduated from high school and has work experience as a forest firefighter. Tr. 41, 55-56. Plaintiff testified that after an automobile accident in February 2018, he has dizziness and neck and back spasms that affect his ability to work. Tr. 42. He testified that he would get dizzy if he stooped down or picked up items over 20 pounds. Tr. 42. His dizziness came and went every day at different times. Tr. 43. His dizzy episodes lasted 20 to 30 minutes at a time. Tr. 43. He had depression. Tr. 46. At the second hearing, Plaintiff testified that he tried to go back to work in August 2020, but that job ended in October 2020 due to dizziness and vertigo. Tr. 509. Kneeling, bending, reaching, and turning his head from side-to-side continued to trigger vertigo. Tr. 510. In May 2021, he passed the commercial driver license test and he went back to work in July 2021. Tr. 509.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

ORDER - 3

(9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in

ORDER - 4

any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold,

ORDER - 5

however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

1       At step five, the Commissioner should conclude whether, in view of the

2   claimant's RFC, the claimant is capable of performing other work in the national

3   economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this

4   determination, the Commissioner must also consider vocational factors such as the

5   claimant's age, education, and past work experience.  20 C.F.R. §§

6   404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other

7   work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

8   404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other

9   work, analysis concludes with a finding that the claimant is disabled and is therefore

10   entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

11       The claimant bears the burden of proof at steps one through four above.

12   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

13   step five, the burden shifts to the Commissioner to establish that (1) the claimant is

14   capable of performing other work; and (2) such work "exists in significant numbers

15   in the national economy."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v.*

16   *Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

17                 **ALJ'S FINDINGS**

18       At step one, the ALJ found Plaintiff engaged in substantial gainful activity

19   after the alleged onset date, but there was a continuous 12-month period during

20

21

which Plaintiff did not engage in substantial gainful activity.[4]  Tr. 480.  At step two, the ALJ found that Plaintiff has the following severe impairments: vestibular disorder/intermittent dizziness/vertigo due to motor vehicle accident.  Tr. 480.

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 483.  The ALJ then found that Plaintiff has the residual functional capacity to perform medium work with the following additional limitations:

> The claimant can occasionally climb stairs and balance, but never climb ladders, ropes or scaffolds.  The claimant must avoid all exposure to dangerous moving machinery and unprotected heights.

Tr. 484.

At step four, the ALJ found that is unable to perform any past relevant work. Tr. 489.  At step five, after considering and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as hand packager, hand laundry, and packing machine operator.  Tr. 490.  Thus, the

---

[4] Plaintiff stipulated to medical improvement as of May 26, 2021, the date he obtained his CDL.  Tr. 508.  The alleged period of disability is a closed period from February 23, 2018 to May 26, 2021.  Tr. 476.

ORDER - 8

ALJ determined that Plaintiff has not been under a disability as defined in the Social Security Act from February 23, 2018, through the date of the decision.  Tr. 490.

### ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying disability income benefits under Title II and supplemental security income under Title XVI of the Social Security Act.  ECF No. 8.  Plaintiff raises the following issues for review:

1.   Whether the ALJ properly found Plaintiff engaged in substantial gainful activity during the relevant period;

2.  Whether the ALJ properly considered the medical opinion evidence;

3.  Whether the ALJ properly considered Plaintiff's subjective complaints;

4.  Whether the ALJ properly considered the lay witness statement; and

5.   Whether the ALJ properly considered step five.

ECF No. 8 at 6.

### DISCUSSION

**A.    Step One – Substantial Gainful Activity**

Substantial gainful activity is work activity that involves doing significant physical or mental activities on a full- or part-time basis and is the kind of work usually done for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  Generally, if a claimant works for substantial earnings as described in the regulations, the work is found to be substantial gainful activity.  20 C.F.R. §§ 404.1574(a), 416.974(a).

The ALJ found that Plaintiff was hired at Northern Columbia Reforestation on August 18, 2020, and earned substantial gainful activity in 2020 and 2021.  Tr. 479. Plaintiff contends his work from August 18, 2020 to October 15, 2020 was an unsuccessful work attempt and that the ALJ erred by considering it.[5]  ECF No. 8 at 9.  Work of six months or less is an unsuccessful work attempt if the claimant stopped working because of an impairment.  20 C.F.R. §§ 404.1574(c), 416.974(c). Plaintiff testified that he stopped working in October 2020 due to vertigo.  Tr. 509. The ALJ noted Plaintiff's testimony and observed that that Plaintiff had substantial gainful activity from August 2020 through 2021.  Tr. 479.  The ALJ went on to find that, "[r]egardless, the undersigned notes that the claimant is being found not disabled on other grounds" and continued the sequential evaluation.  Thus, the Court need not determine whether there was any error because the step one finding was not adverse to Plaintiff and the sequential evaluation continued.

---

[5] Plaintiff also asserts that "the ALJ's finding appears to be based predominantly on the claimant's receipt of unemployment benefits rather than work activity during the period."  ECF No. 8 at 9.  Plaintiff does not cite the record and the Court finds no basis for this assertion.  The ALJ noted evidence of unemployment benefits from the second quarter of 2021 through the first quarter of 2022 in the record, but observed that, "[u]nemployment benefits do not qualify as substantial gainful activity under Social Security Regulations."  Tr. 479, 641-42.

**B.    Medical Opinion**

Plaintiff contends the ALJ failed to properly consider the opinion of Michael Hixon, M.D.  ECF No. 8 at 11-13.  For claims filed on or after March 27, 2017, the regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…"  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5867-88 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.1520c.  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. §§ 404.1520c, 416.920c.  Supportability and consistency are the most important factors in evaluating the persuasiveness of medical opinions and prior administrative findings, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may, but is not required, to explain how other factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *see* 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Dr. Hixon evaluated Plaintiff in January 2019 and diagnosed neck injury status post motor vehicle accident; back pain; insomnia related to neck and back pain; dizziness related to positional vertigo; headache; hypertension; depression and anxiety.  Tr. 353-54.  He assessed limitations of a maximum standing and walking capacity of at least six hours; no limitation on sitting; no assistive device; never engage in postural activities "which will trigger or worsen vertigo or they may result

in a fall if he develops vertigo"; no limitation on manipulative activities; and environmental limitations on working at heights and around heavy machinery but no limitation with extremes of temperature, chemicals, dust, fumes, or excessive noise. Tr. 354.

The ALJ found Dr. Hixon's opinion is partially persuasive. Tr. 488. With regard to supportability, the ALJ found the opinion is supported by Dr. Hixon's exam and objective clinical findings and a review of some of the medical records. Tr. 488. The more relevant the objective medical evidence and supporting explanations provided by a medical source to support his or her opinion, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). With regard to consistency, the ALJ found that Dr. Hixon's opinion that Plaintiff has the ability to perform work at the medium exertion level is consistent with the medical evidence of record. Tr. 488. The more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

ORDER - 12

However, the ALJ found that Dr. Hixon's opinion that Plaintiff could "never" perform postural activities[6] and the statement regarding his fall risk is not consistent with or supported by the overall record.  Tr. 488.  The ALJ noted that there have been no major neurological deficits noted on exam.  Tr. 448 (citing Tr. 269, 273, 278, 303, 307, 310, 350-52, 468-69).  The ALJ also observed that after mid-2018, Plaintiff has not consistently reported vertigo to providers and there is no evidence of him seeking treatment with a specialist for ongoing problems.  Tr. 488.

Plaintiff argues the ALJ erred: (1) by using the same reasoning previously rejected by this Court; (2) by using "incorrect medical understanding"; (3) by misstating Plaintiff's complaints and considering lack of specialized care; and (4) by failing to consider Plaintiff's difficulty walking a straight line during Dr. Hixon's examination.  ECF No. 8 at 11-12.

First, the ALJ did not err by using the same reasoning previously rejected by this Court.  The previous ALJ found Dr. Hixon's opinion restricting postural activity to "never" and statement regarding his fall risk, "overestimate the claimant's limitations and lack supporting evidence."  Tr. 25.  The Court remanded because the previous ALJ failed to discuss supportability and consistency in evaluating Dr.

---

[6] Postural activities include activities such as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, crawling, or stooping.  Social Security Ruling 96-9p, 1996 WL 374185, at *7-8 (effective July 2, 1996).

ORDER - 13

Hixon's opinion and failed to adequately explain why the postural activity and fall limitations were rejected. Tr. 559-60. Here, the ALJ discussed supportability and consistency and gave several reasons for rejecting the postural and fall limitations. The ALJ did not repeat the error of the prior ALJ.

Second, Plaintiff contends the ALJ erred by considering the lack of neurological findings "as benign paroxysmal positional vertigo is not a neurological disorder and has no neurological signs." ECF No. 8 at 11. Plaintiff observes that BPPV is typically triggered by a change in head position with symptoms of dizziness or spinning, loss of balance or unsteadiness, nausea, or vomiting, which may lead to a risk of falling. ECF No 8 at 11-12 (citing *Benign paroxysmal positional vertigo (BPPV)*, MAYOCLINIC.ORG (August 5, 2022), https://www.mayoclinic.org/diseases-conditions/vertigo/diagnosis-treatment/drc-20370060). However, as Defendant points out, the article cited by Plaintiff indicates that depending on symptoms, a patient may be referred to a doctor "who specializes in the brain and nervous system (neurologist)." ECF No. 12 at 16. This suggests that neurological findings are potentially relevant and therefore it was not error for the ALJ to consider the lack of them in this case.

Third, Plaintiff asserts the ALJ erred because he "did complain of vertigo" and by considering lack of specialized care. ECF No. 8 at 12. As the ALJ noted, Plaintiff was in a car accident in February 2018. Tr. 269, 485. In March 2018, Plaintiff went to the emergency department with complaints of dizziness but had a

"reassuring" exam and was prescribed medication and physical therapy.  Tr. 278-80, 305, 485.  At an April 2018 office visit, Plaintiff complained of vertigo and dizziness and was told to continue with medication and follow up with physical therapy.  Tr. 302, 485.  If PT was ineffective, he would be referred to an ear, nose, and throat specialist.  Tr. 302.  In August 2018, Plaintiff said he had been better for one month, was ready to return to work without restriction, and denied vertigo.  Tr. 287, 485.

Plaintiff next complained of vertigo to Dr. Hixon in January 2019.  Tr. 350-51.  The last treatment record noting vertigo is from an April 2019 office visit for follow up on a lesion biopsy wherein Plaintiff reported "room spinning vertigo" approximately three times per day.  Tr. 394.  In December 2019, Plaintiff presented for an office visit with complaints of neck spasms, but he denied dizziness and vertigo was not mentioned.  Tr. 466-69.  The ALJ considered all of these records.  Tr. 485-86.  Neither the ALJ nor the Plaintiff note any other treatment for or complaints of vertigo before the end of the closed period of alleged disability in May 2021, and the Court finds none.  Thus, there are two records after April 2018, including Dr. Hixon's evaluation, which mention vertigo or dizziness.  The ALJ's statement that Plaintiff had not consistently reported complaints of vertigo to his providers after mid-2018 is accurate and the ALJ did not err by making this observation.

Plaintiff also argues that there is "no indication from the ALJ that [Plaintiff] was offered or declined specialized care, and it is unclear if any such care even exists for positional vertigo." ECF No. 8 at 12. However, the record indicates that Plaintiff was referred to physical therapy "to help patient be more effective with Epley maneuver to help resolve vertigo" and that referral to an ear, nose and throat specialist was an option "[i]f patient has no improvement in the next 4 weeks." Tr. 305; *see* Tr. 280-81, 284, 485. There is no evidence of physical therapy treatment or referral to an ENT in the record. The ALJ's interpretation of the evidence is reasonable and supported by substantial evidence.

Fourth, Plaintiff asserts that the ALJ failed to consider his testimony that he struggled to walk in a straight line during Dr. Hixon's examination and argues this supports the limitation on all postural activities and an increased fall risk. ECF No. 8 at 12. At the first hearing, Plaintiff testified that during his examination with Dr. Hixon, he had trouble walking a straight line, "I couldn't do it because I went and started stumbling." Tr. 47-48. However, Dr. Hixon's exam findings indicate, "[h]e can do tandem gait. He can walk on his heels and his toes and he can bend and squat with minimal difficulty. Romberg is negative. His gait appears normal and without discomfort." Tr. 352, 486. Dr. Hixon did not note any difficulty walking; in fact, he assessed the ability to walk and stand consistent with the exertion required by medium work. Tr. 354. Furthermore, even if Plaintiff initially stumbled during the

examination with Dr. Hixon, which was not documented by Dr. Hixon, it is not clear that this would require a change in the ALJ's analysis.

Here, it is apparent that the ALJ considered Plaintiff's testimony regarding symptoms and Dr. Hixon's opinion.  Tr. 484, 488.  It is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Additionally, the Ninth Circuit "does not require ALJs to perform a line-by-line exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *F&R adopted*, 2023 WL 5109769 (E.D. Cal. Aug. 8, 2023).  The ALJ did not err in evaluating Dr. Hixon's opinion.[7]

---

[7] Plaintiff challenges the ALJ's rejection of the opinion of Kelly Glidewell, ARNP for the first time on reply.  ECF No. 13 at 4-5.  Arguments not made in an opening brief are deemed waived.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009); *see also Bazuaye v. I.N.S.,* 79 F.3d 118, 120 (9th Cir.1996) ("Issues raised for the first time in a reply brief are deemed waived."); *Thompson v. Commissioner*, 631 F.2d 642, 649 (9th Cir. 1980), *cert. denied*, 452 U.S. 961 (1981) ("appellants cannot raise a new issue for the first time in their reply briefs") (citing *U.S. v. Puchi*, 441 F.2d 697, 703 (9th Cir. 1971), *cert. denied*, 404 U.S. 853 (1971)); *Ass'n of Irritated Residents v. C & R Vanderham Dairy*, 435 F.Supp.2d

## C.    Symptom Testimony

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  2017 WL 5180304, at *2 (effective October 25, 2017).  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (quotation marks omitted).  "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims.

---

1078, 1089 (E.D. Cal. 2006) ("It is inappropriate to consider arguments raised for the first time in a reply brief.").  For this reason, the argument is not considered by the Court.

ORDER - 18

*Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why it discounted claimant's symptom claims)).

"The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *9 (effective October 25, 2017); 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ is instructed to "consider all of the evidence in an individual's record," to "determine how symptoms limit ability to perform work-related activities." SSR 16-3p, at *2.

ORDER - 19

First, the ALJ found the objective evidence is not consistent with and does not support the degree of disabling severity alleged. Tr. 485.    An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857.  Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  Furthermore, contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

As discussed *supra*, the ALJ reviewed the medical record in detail.  The ALJ noted that in March 2018, Plaintiff was diagnosed with a vestibular disorder and intermittent dizziness after a motor vehicle accident in February 2018.  Tr. 268, 270, 485.  Objective findings from a CT scan of the head were negative and showed no intracranial injury, hemorrhage, or cortical infarct.  Tr. 263, 354, 485.  Plaintiff had a "reassuring" exam and was prescribed medication and physical therapy.  Tr. 278-80, 305, 485.  Other exam notes in the record reflect no major neurological deficits and

are mostly within normal limits.  Tr. 269, 273, 278, 303, 307, 315, 350-52, 468-69, 485.  Thereafter, Plaintiff complained of vertigo and dizziness in April 2018.  Tr. 302, 485.  Medication was continued and a referral was made to physical therapy.  Tr. 302.  By August 2018, Plaintiff denied vertigo, said he had been doing better for one month, and indicated he was ready to return to work without restriction.  Tr. 287, 485.  In January 2019, Plaintiff was examined by Dr. Hixon and complained of vertigo.  Tr. 350-51, 486.  He performed tandem gait, walked on heels and toes, and bent and squat with only "minimal difficulty."  Tr. 352, 486.  In April 2019, Plaintiff reported "room spinning vertigo" approximately three times per day.  Tr. 394.  In December 2019, Plaintiff presented for an office visit with complaints of neck spasms, but he denied dizziness and vertigo was not mentioned.  Tr. 466-69.  No other medical records mention vertigo before the end of the closed period on May 26, 2021, when Plaintiff obtained his CDL.  Tr. 487.

Plaintiff argues that the ALJ misunderstood the medical evidence.  ECF No. 8 at 14.  Plaintiff observes that the ALJ put the word "benign" in quotations when stating the diagnosis was benign positional vertigo.  ECF No. 8 at 14.  Plaintiff's implication is not entirely clear and the Court concludes this does not suggest any error.  Plaintiff also notes that the March 2018 record cited by the ALJ also includes a note that Plaintiff was initially too dizzy to walk, but the dizziness subsided before he walked without neurological deficits.  ECF No. 8 at 14-15.  Plaintiff argues that a lack of neurological deficits "does not mean that he never has dizziness."  ECF No.

8 at 15.  Again, Plaintiff's argument is unclear, as the ALJ acknowledged that exact finding.  Tr. 485 ("The claimant was apparently too dizzy initially for gait testing, but his coordination testing showed no abnormality, and a physician indicated, 'Reevaluation once dizziness had subsided showed a normal Romberg and gait testing without ataxia'" (quoting Tr. 278)).  Plaintiff again argues that the ALJ's observation of a lack of neurological findings is erroneous, but as discussed *supra*, it is a relevant consideration.  Furthermore, a lack of significant neurological findings is just one factor in the overall record considered by the ALJ.  The ALJ's consideration of the objective evidence was reasonable.

Plaintiff also argues the ALJ "went through the record noting physical findings when the claimant was not experiencing dizziness" and "ignor[ed] all required considerations of SSR 16-3p."  ECF No. 8 at 16.  However, under SSR 16-3p, the objective medical evidence is a "useful indicator" regarding the intensity and persistence of symptoms and the ALJ "must consider" whether the claimant's statements about the intensity, persistence, and limiting effects of his symptoms are consistent with the medical signs and laboratory findings in the record.  SSR 16-3p, at *5.  Furthermore, other than the four records noted by the ALJ establishing complaints of dizziness and vertigo (March 2018, April 2018, January 2019, and April 2019), Plaintiff points to no other records indicating complaints of dizziness, other than his own testimony.  It was not erroneous for the ALJ to observe the medical record is inconsistent with Plaintiff's allegations.  Additionally, as discussed

ORDER - 22

below, the ALJ cited other factors listed in SSR 16-3p, so Plaintiff's argument that the ALJ "ignored" its provisions is incorrect.

Second, the ALJ found that the overall record reflects only minimal conservative treatment. Tr. 485. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); SSR 16-3p. The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. The ALJ noted that Plaintiff never sought treatment with a specialist and never attended physical therapy. Tr. 486. At the time of Dr. Hixon's evaluation, Plaintiff was not taking any medication for dizziness. Tr. 351. The ALJ noted that treatment notes show no complaints of vertigo after April 2018. Tr. 486. Plaintiff does not make any argument regarding this reasoning, and it is supported by substantial evidence. Therefore, the ALJ properly considered the minimal treatment received by Plaintiff in evaluating his symptom claims.

Third, the ALJ found that there are inconsistencies between Plaintiff's testimony and the record. The ALJ evaluates a claimant's statements for their consistency, both internally and with other information in the case record. SSR 16-3p, at *5. For example, the ALJ noted that while Plaintiff alleges major difficulties with balance and stability, there is no evidence he uses or requires a cane or other assistive device, nor any evidence of falls. Tr. 486. The ALJ observed that Dr. Hixon noted Plaintiff said he had not had any recent falls, and that he felt unsteady

in the shower if he closed his eyes, but he had not fallen.  Tr. 351, 486.  Plaintiff does not address this reasoning and it is supported by substantial evidence.

Fourth, the ALJ found Plaintiff's daily activities are inconsistent with allegations of more limiting symptoms.  Tr. 487.  It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in evaluating symptom claims.  *See Rollins*, 261 F.3d at 857.  "Even where [Plaintiff's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.  For example, the ALJ noted that despite reports of debilitating vertigo and dizziness, as well as disabling mental limitations, Plaintiff manages his personal care, hygiene, and medications independently; he performs some household chores; and uses a computer and the internet for Facebook and playing games.  Tr. 358-59, 487.  Plaintiff reported that he provided care for his mother-in-law and her husband who has cancer by washing dishes and buying things.  Tr. 359, 487.  The ALJ also noted that despite reported difficulties with anxiety, he reported getting out of the house regularly, occasionally shopping in stores with his wife, attending medical appointments, and spending time with friends, including playing pool.  Tr. 358-59, 487.

Plaintiff argues the ALJ "failed to provide any specific details" and "failed to identify any activities" inconsistent with Plaintiff's allegations.  ECF No. 8 at 19.  Plaintiff points out he testified that he has intermittent dizziness while doing

chores and increased dizziness while bending or stooping and that the activities cited by the ALJ could all be done with breaks for dizziness. ECF No. 8 at 19 (citing Tr. 46-49). The Court agrees that most of the activities cited by the ALJ could conceivably be performed in a manner consistent with Plaintiff's allegations. Playing pool, however, seems reasonably inconsistent with Plaintiff's claim that bending over triggers his dizzy spells. Furthermore, as Defendant observes, the February 2019 record cited by the ALJ notes that Plaintiff works on vehicles, replaced a heater in his wife's car, bowls weekly, and went hunting and camping after the alleged onset date. Tr. 358-59. Even if the activities cited by the ALJ are insufficiently inconsistent with Plaintiff's allegations, any error is harmless because the ALJ provided other valid reasons to discount Plaintiff's symptom claims. *See Molina*, 674 F.3d at 1115.

Fifth, the ALJ noted that Plaintiff was able to work during the period at issue. Tr. 487. The ability to work may be considered in evaluating symptom claims. *Bray v. Comm'r Social Security Admin.,* 554 F.3d 1219, 1227 (9th Cir.2009) (finding the ALJ properly discounted a claimant's testimony because she had worked as a personal caregiver for two years and had since sought out other employment). As noted *supra*, Plaintiff objects to the ALJ's consideration of his work activity during the period at issue because Plaintiff testified that while he started working in August 2020, the job ended in October 2020 due to vertigo. ECF No. 8 at 18. An unsuccessful work attempt which fails due to a claimant's

1    limitations should not typically be a factor in considering a claimant's symptom

2    complaints.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007).

3    However, as the ALJ noted, despite Plaintiff's testimony, his earning record reflects

4    substantial gainful activity from August 2020 through 2021.  Tr. 487.  As Defendant

5    suggests, ECF No. 12 at 12, even if the ALJ erred with regard to this issue, the error

6    is harmless because the ALJ gave other specific, clear and convincing reason

7    supported by substantial evidence.

8        Lastly, Plaintiff argues the ALJ improperly found that Plaintiff's receipt of

9    unemployment benefits reflects negatively on his credibility.  ECF No. 8 at 18.

10   Because only individuals who have held themselves out as able to work can

11   receive unemployment compensation, receipt of such benefits may influence the

12   weight given to testimony about completely disabling symptoms.  *Carmickle*, 533

13   F.3d at 1161–62.  At step one, the ALJ indicated that Plaintiff's receipt of

14   unemployment benefits suggests Plaintiff either inaccurately represented his ability

15   to work to the state or inaccurately represented his inability to work.  Tr. 479-80.

16   However, "the record here does not establish whether [plaintiff] held [him]self out

17   as available for full-time or part-time work," so there is no clear inconsistency

18   between his receipt of unemployment benefits and his claim that he is disabled.  *Id.*

19   at 1162.  Furthermore, the record reflects that Plaintiff received unemployment

20   benefits from the second quarter of 2021 to the first quarter of 2022.  Tr. 641-42.

21   Plaintiff stipulated to medical improvement as of May 26, 2021, which the ALJ

found was consistent with the evidence.  Tr. 487.  Thus, the period when Plaintiff

received unemployment benefits was largely outside the relevant period.  For these

reasons, to the extent the ALJ considered receipt of unemployment benefits as a

reason for giving less weight to Plaintiff's symptom claims, such consideration

was improper.  Nonetheless, the ALJ gave other clear and convincing reasons

supported by substantial evidence, so to the extent there is any error, the error is

harmless.

**D.    Lay Witness**

For claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c and

416.9520c indicate that an ALJ must evaluate evidence from medical sources and

clarifies how an ALJ should evaluate nonmedical lay testimony.  *See* 20 C.F.R. §

416.920c(d).  The regulations indicate ALJs should consider "all of the available

evidence" in evaluating the intensity and persistence of symptoms, including

evidence from "medical sources and nonmedical sources" about the effect of a

claimant's symptoms.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1); *see also* SSR

16-3p (requiring ALJs to consider other evidence such as other nonmedical sources

to evaluate symptoms).  However, an ALJ is not required to articulate how

evidence from nonmedical sources was considered using the requirements

applicable to evaluations of medical opinions.  *See* 20 C.F.R. §§ 404.1520c(d),

416.920c(d).  Rather, "[i]f the ALJ wishes to discount the testimony of lay

witnesses, he must give reasons that are germane to each witness." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

Plaintiff's brother submitted a statement in December 2020 noting Plaintiff has been dealing with the effects of hitting his head during an auto accident. Tr. 259. He stated that Plaintiff has adjusted his daily activities so he does not "fall over from the vertigo." Tr. 259. He witnessed Plaintiff grabbing onto a wall, door, counter or ladder to keep from falling over. Tr. 259. Plaintiff's brother stated that Plaintiff's injury was debilitating and overwhelming and kept him from being active. Tr. 259. He noted that Plaintiff expressed that anxiety consumed him at times. Tr. 259.

The ALJ considered the statement of Plaintiff's brother and found it is not consistent with the overall evidence, including largely normal neurological exams and normal psychiatric findings on multiples exams. Tr. 489 (citing Tr. 269, 273, 278, 303, 307, 310, 350-52, 357-58, 367, 395, 397, 61, 468-69). Plaintiff argues the ALJ improperly rejected the observations made by his brother. ECF No. 8 at 20. As discussed throughout this decision, the ALJ's finding is supported by substantial evidence. Furthermore, as Defendant observes, Plaintiff's brother's statement mentions the same limitations alleged by Plaintiff. ECF No. 12 at 13-14 (citing Tr. 45-49, 207-14, 509-11). Where the ALJ provides clear and convincing reasons for the weight given to the claimant's testimony, similar testimony by a different witness may also be given less weight. *See Diedrich v. Berryhill*, 874 F.3d 634, 645

ORDER - 28

(9th Cir. 2017); *Molina*, 674 F.3d at 1114; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).  The ALJ did not err in evaluating the lay witness statement.

**E.    Step Five**

Plaintiff argues the ALJ erred at step five because the vocational expert's opinion was based on an incomplete hypothetical.  ECF No. 8 at 20.  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record which reflect all of a claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101.  The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel.  *Osenbrook*, 240 F.3d at 1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these restrictions as long as they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes*, 881 F.2d at *id.*

Plaintiff's argument assumes the ALJ erred in evaluating the medical opinion evidence and Plaintiff's symptom claims.  ECF No. 8 at 20-21.  The ALJ's reasons for rejecting additional limitations were, as discussed throughout this decision, legally sufficient and supported by substantial evidence.  The ALJ therefore properly excluded additional limitations from the RFC and hypothetical to the vocational

expert.  The hypothetical contained the limitations the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony the VE gave in response to the hypothetical was therefore proper.  *See id.*; *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217-18 (9th Cir. 2005).

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly,

1.  Plaintiff's Brief, **ECF No. 8**, is **DENIED**.

2.  Defendant's Brief, **ECF No. 12**, is **GRANTED**.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** December 5, 2024.

_____
LONNY R. SUKO
Senior United States District Judge

ORDER - 30